*Tagged*

ORDERED in the Southern District of Florida on 7/16/2010



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| *In re:* | Case No. 08-11035-BKC-RBR |
| BRANDON OVERSEAS, INC., | Chapter 7 |
| Debtor. | |
| MARIKA TOLZ, Trustee, | Adversary Proceeding No.: |
| Plaintiff, | 09-01971-RBR |
| v. | |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, and DOUGLAS SHULMAN, | |
| Defendants. | |

### AMENDED ORDER DENYING UNITED STATES' MOTION TO DISMISS AMENDED COMPLAINT

THIS MATTER came before the Court for hearing on March 12, 2010 (the "Hearing") on the *United States' Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law* (the "Motion to Dismiss") [D.E. 38]. The Court, having heard the arguments of counsel and

1

considered the Amended Complaint [D.E. 33], the Motion to Dismiss, and the Trustee's Response [D.E. 48], denies the Motion to Dismiss for the reasons set forth herein.

## BACKGROUND AND PROCEDURAL HISTORY

This adversary proceeding relates to the bankruptcy case entitled *In re Brandon Overseas, Inc.*, Case No.: 08-11035-RBR-BKC (the "Main Case"), commenced by the filing of an involuntary chapter 7 petition against Brandon Overseas, Inc. (the "Debtor") on January 30, 2008 [D.E. 1 in the Main Case]. The Court entered an order for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code" or "Code") on February 6, 2008 [D.E. 11 in the Main Case]. Marika Tolz was appointed the Chapter 7 Trustee.

The Trustee filed the original complaint in this adversary proceeding on September 1, 2009 [D.E. 1]. The Court dismissed the original complaint with leave for the Trustee to amend on January 8, 2010 [D.E. 26]. The Trustee filed the Amended Complaint on January 28, 2010, and the United States filed the Motion to Dismiss on February 11, 2010.

The Amended Complaint contains five counts that seek the avoidance and recovery of 26 allegedly fraudulent transfers the Debtor made to the Internal Revenue Service (the "IRS") in the amount of $1,027,461.45 (the "Transfers"). Count I seeks to avoid the Transfers under 11 U.S.C. § 548(a)(1)(A). Count II seeks to avoid the Transfers under 11 U.S.C. § 548(a)(1)(B). Counts III and IV seek to avoid certain of the Transfers under 11 U.S.C. § 544 and Fla. Stat. § 726.105, *et seq.*[1] Finally, Count V seeks to recover the Transfers under 11 U.S.C. § 550.

The Trustee alleges that the Transfers were paid to the IRS to satisfy either Nicole or James Brandon's individual tax liabilities for certain tax years and were not paid for any debt owed by the Debtor. Throughout the Amended Complaint, the Trustee alleges that the Transfers were part of Nicole Brandon's larger pattern of looting the Debtor by running expenses through the Debtor to support her and James Brandon's extravagant lifestyle. The Trustee further

---

[1] Counts III and IV cover only four transfers totaling $290,392.11 that occurred outside of the two year look-back period provided under 11 U.S.C. § 548.

alleges that Nicole Brandon was not entitled to have her and James Brandon's personal expenses paid for by the Debtor and that the Transfers were not authorized by an employment agreement or as bonus compensation. In addition, the Trustee alleges that the Debtor did not itemize or seek deductions on its corporate taxes for the Transfers. Finally, the Trustee alleges that the Debtor received no reasonably equivalent value for making the Transfers, but instead the Transfers benefitted only Nicole and James Brandon.

### JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### STANDARD ON MOTION TO DISMISS

A complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. (the "FRCP") Rule 12(b)(6) if no set of facts can be proven that would support a claim for relief.[2] *Frazier v. Alexandre,* 434 F. Supp. 2d 1350, 1357 (S.D. Fla. 2006) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). In considering a motion to dismiss, a court should accept all well-pleaded allegations as true and view the motion in the light most favorable to the non-moving party. *Frazier,* 434 F. Supp. 2d at 1357.

In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–50 (2009), the Supreme Court heightened the burden that a plaintiff must meet to withstand a motion to dismiss. After *Twombly* and *Iqbal,* mere "notice pleading" is no longer sufficient for a complaint to withstand a motion to dismiss. As the Supreme Court stated in *Twombly:*

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

---

[2] Fed. R. Bankr. P. 7012 applies FRCP Rule 12 in adversary proceedings.

*Twombly*, 550 U.S. at 555. In considering the present Motion to Dismiss, this Court must therefore determine whether the plaintiff's claim is plausible such that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See *Iqbal*, 129 S.Ct. at 1949. This standard does not require a showing of probable guilt, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." See *id*.

## CONCLUSIONS OF LAW

The United States advances three arguments in the Motion to Dismiss: (1) the Court lacks jurisdiction over the subject of Counts III and IV of the Amended Complaint; (2) the Complaint should be dismissed for failure to plead fraud with particularity as required by Rule 9 of the FRCP and the heightened pleading requirements under FRCP Rule 8(a)(2) as announced by the Supreme Court in *Twombly* and *Iqbal*; and (3) the Amended Complaint fails to join Nicole and James Brandon, who the United States asserts are necessary parties to this action under Rule 19 of the FRCP. The Court will address these arguments in turn.

### A. The Court Possesses Jurisdiction Over the Subject of Counts III and IV of the Amended Complaint

Counts III and IV of the Amended Complaint seek to avoid certain of the Transfers pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.105, *et seq.* Section 544(b) of the Bankruptcy Code provides in part that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Fla. Stat. § 726.105, *et seq.*, a part of the Florida Uniform Fraudulent Transfer Act (the "FUFTA"), deems certain transfers by debtors to be fraudulent under Florida law. As such, Counts III and IV of the Amended Complaint invoke § 544(b) to avoid certain of the Transfers under the FUFTA.

The Motion to Dismiss argues that the Court lacks jurisdiction over the subject of Counts III and IV because: (1) the voluntary payment rule (the "VPR") bars the Trustee's claims, (2) no

4

actual creditor could bring a FUFTA claim against the United States, and (3) the Court lacks jurisdiction to award the requested relief.

### 1. The VPR Does Not Bar the Counts III and IV for Purposes of the Motion

Under Florida law, the VPR generally prohibits actions for refunds of taxes voluntarily paid, absent a specific statutory remedy. *See, e.g., State ex rel. Victor Chem. Works v. Gay*, 74 So. 2d 560 (Fla. 1954); *Johnson v. Atkins*, 32 So. 879 (Fla. 1902); *City of Miami v. Florida Retail Fed'n, Inc.*, 423 So. 2d 991 (Fla. App. 1982). The United States argues that (1) the Court should find that the Transfers were made voluntarily, and (2) as such, under the VPR, there can be no action for recovery of the Transfers absent a provision in the law authorizing a refund (Mot. 6–7). The United States further contends that the FUFTA is not such a statute.

In support thereof, the United States cites to *In re Abatement Envtl. Res., Inc.*, 301 B.R. 830, 833 n.3 (D. Md. 2003), for the proposition that "a payment by a corporation, at the insistence of one of its principals, of the principal's tax liability, is encompassed by the term 'voluntary payment.'" This Court declines to adopt the cited reasoning of the *Abatement* court. Treating corporate payments of a principal's tax liability, at the insistence of that principal, as voluntary payments for purposes of the VPR could produce illogical results. For example, a company could "choose" to make fraudulent transfers to benefit its principals prior to a bankruptcy filing, to the detriment of itself and its creditors, knowing that the VPR would hinder any attempt to recover those transfers in bankruptcy.

Accordingly, the Court finds that the Transfers were not made voluntarily for the purpose of considering the Motion to Dismiss. The Court reaches this result by viewing the totality of the allegations in the Amended Complaint in the light most favorable to the Trustee, including the allegations that the Transfers: (1) were not authorized by the Debtor; (2) were not made pursuant to an employment agreement; (3) were not deducted on the Debtor's tax returns; and (4) were made with the intent to defraud creditors.

Because the Transfers were not made voluntarily for purposes of the Motion to Dismiss, the VPR does not bar Counts III and IV of the Amended Complaint. The issue of whether the FUFTA in fact authorizes refunds of voluntary tax payments despite the VPR is beyond the scope of this order, and the Court will not address it at this time.

### 2. The Doctrine of Sovereign Immunity Does Not Bar Counts III and IV

The doctrine of sovereign immunity prevents suits against the United States except when Congress has "unequivocally expressed" its consent to be sued. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34 (1992). Pursuant to § 106 of the Bankruptcy Code, the United States has waived sovereign immunity with respect to claims brought under certain Code sections, including § 544. However, § 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law *by a creditor holding an unsecured claim*" (emphasis added). A trustee seeking to avoid a transfer under this provision must thus demonstrate the existence of an actual unsecured creditor "who may avoid the transfer or obligation under applicable law." 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 544.07[1] at p. 544-18 (15th ed. 2001). The Motion to Dismiss contends that there is no waiver of sovereign immunity allowing creditors to bring FUFTA actions against the United States; therefore, the Trustee cannot utilize the FUFTA under § 544 such that Counts III and IV must be dismissed.

However, the Court agrees with and adopts certain legal conclusions of the decision in *Liebersohn v. Internal Revenue Service (In re C.F. Foods, L.P.),* 265 B.R. 71 (Bankr. E.D. Pa. 2001). In *Liebersohn,* the bankruptcy trustee brought suit against the IRS under § 544 to avoid tax payments made by a debtor partnership for tax payments allegedly made for the benefit of the individual partners and not the debtor. The trustee filed a cross-motion for summary judgment against the IRS, and in response, the IRS argued that sovereign immunity precluded its liability. Although the *Liebersohn* court denied the both parties' motions for summary judgment because the case contained issues of material fact, the court stated that "[b]y

6

including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." *Id.* at 85. That court also held that the "enhancement of rights of others to the detriment of the federal government, particularly in the government's capacity as tax collector, is commonplace, including in the Bankruptcy Code itself." *Id.* at 86 (citing 11 U.S.C. §§ 724 and 726, and 26 U.S.C. §§ 6321 and 6323). The *Liebersohn* court concluded its analysis on this point by stating that:

> ...in light of the unambiguous language of § 106, as supported by the legislative history; the specific inclusion of § 544 in § 106(a); the precedent for Congress providing a trustee with rights that are greater than those possessed by the unsecured creditor upon whom a § 544(b) claim is based; and the policy reasons favoring recovery for the benefit of all creditors, the IRS's sovereign immunity argument must fail.

265 B.R. at 86. In light of the above, the Motion to Dismiss' sovereign immunity argument fails, and the Court will not dismiss Counts III and IV.

### 3.     The Amended Complaint Seeks Relief Beyond the Scope of § 550

Counts III and IV also seek relief pursuant to Fla. Stat. § 726.108, including attachment, injunction, appointment of a receiver, and pre or post-judgment interest. While the Court finds that the United States has waived sovereign immunity with respect to certain causes of action used in conjunction with § 544 of the Code, § 544 merely defines what transfers may be avoided by the trustee. 11 U.S.C. § 544(b)(1) ("the trustee may avoid").

Section 550 of the Code states what relief is available after a transfer is avoided under § 544: "to the extent a transfer is avoided under section 544 . . . the trustee may recover the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). Section 550 makes no provision for attachment, injunction, an appointment of receiver, or any other relief sought by the Trustee. The Court will therefore dismiss the Amended Complaint to the extent that it seeks relief beyond the purview of § 550.

### B.     **The Amended Complaint States Claims Upon Which Relief May Be Granted**

7

The United States argues that the entire Amended Complaint must be dismissed for failure to plead fraud with particularity as required by Rule 9 of the FRCP and the heightened pleading requirements under Rule 8(a)(2) of the FRCP as articulated by the Supreme Court in *Twombly* and *Iqbal*.[3]

### 1. The Amended Complaint Satisfies the Pleading Standard of Rule 9

This Court has held post-*Twombly* that (1) the requirements of pleading fraud with specificity are relaxed where the plaintiff is a trustee in bankruptcy, and (2) constructive fraud claims are not subject to FRCP Rule 9(b)'s heightened pleading requirements. *Kapila v. Arnel (In re Arizen Homes, Inc.)*, Case No. 07-15650-BKC-RBR, 2009 WL 393863, at *2-*3 (Bankr. S.D. Fla. Jan. 23, 2009). In *Arizen Homes*, the Court reasoned that "[s]uch flexibility afforded to trustees in bankruptcy with respect to the pleading requirements is appropriate '[g]iven the inevitable lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party . . . '" *Id.* at *2 (quoting *Profilet v. Cambridge Financial Corp.*, 231 B.R. 373, 379 (S.D. Fla.1999)). The Court further held that "[a] pleading satisfies the particularity requirement if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response . . . or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* at *2 (quoting *In re Servico, Inc.*, 144 B.R. 557, 559 (Bankr. S.D. Fla.1992)).

Pursuant to this standard, the Trustee has adequately pled facts that satisfy the elements of actual and constructive fraud under 11 U.S.C. § 548. These include allegations that the Debtor was insolvent when the Transfers took place, that the Debtor's insolvency was caused by Nicole Brandon's pattern of running her and James Brandon's personal expenses through the Debtor in addition to taking distributions in excess of actual equity when the Debtor's payables were mounting, that the debt to the IRS was personal to the Brandons and

---

[3] Fed. R. Bankr. P. 7008 and 7009 apply FRCP Rule 8 and 9 respectively in adversary proceedings.

was not owed by the Debtor to the IRS, that the Transfers were not authorized by the Debtor as compensation through an employment or other compensation agreement with the Debtor, that the Transfers were not recognized on the Debtor's tax returns as itemized deductions, and that the Brandons' fled to Southeast Asia on the eve of the involuntary petition. See Am. Compl. at ¶¶ 3, 7, 15, 16, 18, 19, 20, 21, 31, 32, 33, 39, and 46. Based upon these facts, the United States has adequate information to prepare an answer to the Amended Complaint.

### 2. The Amended Complaint Satisfies the Pleading Standard of Rule 8

The United States does not challenge most of the allegations in the Amended Complaint that support the elements of the fraudulent transfer counts, including the insolvency of the Debtor, the lack of an employment or other compensation agreement, and the Debtor's taking on more debt without meeting its debts as they became due. Instead, the United States challenges the sufficiency of the allegations regarding (1) reasonably equivalent value, (2) compensation, and (3) fraudulent intent.[4]

#### a. The Allegations as a Whole Support the Allegation of Lack of Reasonably Equivalent Value

The Amended Complaint contains multiple allegations that the Debtor did not receive reasonably equivalent value for the Transfers. See Am. Compl. at ¶¶ 3, 18, 21, 25, 29, 32, and 33. The United States asserts these allegations are merely legal conclusions. When read in conjunction with the surrounding allegations, however, the allegation that the Debtor did not receive reasonably equivalent value for making the Transfers is adequately supported by facts alleged in the Amended Complaint. In reviewing the adequacy of complaints in civil cases, the

---

[4] Pursuant to 11 U.S.C. § 548, the trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
(a)(1)(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(a)(1)(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation.

9

Court must grant a motion to dismiss if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). However, the factual allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43, 45 (5th Cir. 1967)). Given the relevant facts recited in the Amended Complaint, which the Court summarizes in section B(1) of this opinion, the Court finds that the Trustee's allegations fulfill *Twombly*'s plausibility standard and the FRCP Rule 8(a)(2) requirement to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."

### b.  Compensation

The United States also argues that the Amended Complaint does not meet the *Twombly* standard of pleading because "the specific transfers that the Trustee seeks to avoid as 'consistent' with looting of the Debtor are also equally consistent with compensation paid by the Debtor to Brandon in exchange for her services to the Debtor" (Mot. 17).

However, the issue of whether Transfers could have been part of Nicole Brandon's compensation is in the nature of an affirmative defense and is dependent upon "all of the facts of each case." *See Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997) (affirming the bankruptcy and federal district court's decision that there was no fraud in this case because the debtor received a reasonably equivalent value for all transfers). At this stage of the proceedings, the substantive portion of the case is not yet at issue nor have the facts of the case been developed. As such, the Court finds that the United States' factual dispute over the possibility of the Transfers being part of a legitimate compensation agreement to be premature.

Similarly, the United States argues that Trustee does not allege what Nicole Brandon's reasonable compensation should have been (Mot. 19). The Trustee, however, need not make such an allegation. She has properly alleged that the Transfers were not authorized pursuant to an employment agreement or as bonus compensation on top of the distributions that Nicole

10

Brandon received from the Debtor. The Trustee has also alleged that James Brandon was not an employee of the Debtor, and therefore should not have been reimbursed by the Debtor for any of his personal expenses, including his personal income taxes. *See* Am. Compl. at ¶¶ 7, 16, 17, and 18. In short, the Amended Complaint adequately alleges that whatever compensation was paid to Nicole Brandon did not include the Transfers and that James Brandon was not entitled to reimbursement from the Debtor for any of his personal expenses.

The United States also cites *In re Taylor*, 386 B.R. 361, 370 (Bankr. S.D. Fla. 2008), for the proposition that an "indirect benefit" can provide reasonably equivalent value to a debtor, which might indicate that the Transfers were actually legitimate ones that benefited the Debtor. However, the indirect benefit to the debtor must be "fairly concrete." *Official Cmte. v. Pederson & Haupt (In re Crystal Med. Prods., Inc.)*, 240 B.R. 290, (Bankr. N.D. Ill. 1999) (citing *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 578 (7th Cir.1998)); 5 *Collier on Bankruptcy* ¶ 548.05[1][b] at p. 548–51.

The Trustee has adequately pled that there is no indication in the Debtor's books and records that demonstrates that the Debtor received *any benefit* for the Transfers. The Amended Complaint thus adequately alleges that "what went out" simply was not commensurate with "what was received." *See Bakst v. O'Connor & Taylor Dev. Corp. (In re Vilsack)*, 356 B.R. 546, 553 (Bankr. S.D. Fla. 2006) (citing *In re LeNeve*, 341 B.R. 53, 57 (Bankr. S.D. Fla. 2006)) (holding that there was a dispute of material fact as to whether the debtor received a reasonable equivalent value during a real estate deal). The Trustee must still prove at trial that the Debtor received no benefit, whether indirect or otherwise, from paying the Brandon's personal tax liabilities. But at the motion to dismiss stage, the Amended Complaint's allegations that the Debtor received no benefit or reasonably equivalent value on account of the Transfers to the IRS are sufficient to withstand the Motion to Dismiss.

    c.  **The Plaintiff Has Carried Her *Prima Facie* Burden on Fraudulent Intent**

11

The United States also argues that the Trustee has failed adequately to allege fraudulent intent by the Debtor in making the Transfers.

The Eleventh Circuit recognizes that direct proof of actual fraud is often very difficult to establish. *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1271 (11th Cir. 1998). Recognizing that direct evidence of fraud does not always exist, courts also allow fraudulent intent to be proven through circumstantial evidence and the surrounding circumstances of the transactions, including the "badges of fraud." *Id.* at 1271–72. These badges of fraud include whether:

(1) The transfer was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer was disclosed or concealed;

(4) Before the transfer was made the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all of the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration the debtor received was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Feltman v. Leading Edge Group Holdings, Inc. (In re Certified HR Servs. Co.)*, Case No. 05-22912-BKC-RBR, 2008 WL 2783157, at *4 (Bankr. S.D. Fla. July 16, 2008) (citing badges of fraud from *In re XYZ Options*); *Feltman v. Warmus (In re Am. Way Serv. Corp.)*, 229 B.R. 496, 530 (Bankr. S.D. Fla. 1999).

The Eleventh Circuit found that when using the badges of fraud to determine the existence of actual fraudulent intent, courts should consider the totality of the circumstances. *Model Imperial*, 250 B.R. at 791 (citing *XYZ Options*, 154 F.3d at 1271 n.17; *In re Sherman*, 67 F.3d 1348 (8th Cir.1995)). The Trustee thus need not prove that every badge of fraud exists to make her *prima facie* case that the Debtor had the requisite fraudulent intent in making the Transfers.

In this case, the Amended Complaint alleges several factors from which the Court can infer fraudulent intent: (1) the Debtor was insolvent at all times relevant to the Transfers; (2) the Debtor did not receive reasonably equivalent value for the Transfers; (3) the transfers occurred shortly after substantial debts were incurred (the Debtor's payables mounted at a rate that exceeded revenues for a period of years); (4) the Debtor's principals absconded after making the Transfers; and (5) the Debtor was not paying its debts as they become due.

The Court could infer from the presence of these badges of fraud that the Debtor had the requisite fraudulent intent when making the Transfers. Accordingly, the Court finds that the Debtor's alleged fraudulent intent is a material fact that should be established at trial. *See In re Certified HR Servs.*, 2008 WL 2783157, at *4 (finding that the trustee established a *prima facie* case and that transfers at issue were done with actual intent to hinder, delay, or defraud debtor's creditors because four of the twelve badges existed).

### C. The Brandons are not Necessary Parties

The United States' final argument is that the Amended Complaint should be dismissed for failure to join the Brandons as necessary parties pursuant to Rule 19 of the FRCP.[5] Specifically, Rule 19(a)(1) requires the joinder of certain necessary parties before an action may proceed:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if. . .
>     (B)    that person claims an interest relating to the subject of the action

---

[5] Fed. R. Bankr. P. 7019 applies FRCP Rule 19 in adversary proceedings.

> and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The burden is on the United States to establish that the Brandons are necessary to this action under Rule 19. *BFI Waste Sys. Of North Am., Inc. v. Broward County, Florida*, 209 F.R.D. 509, 514 (S.D. Fla. 2002) (citing *Ship Constr. & Funding Serv. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1325 (S.D. Fla. 2001)).

### 1. The Brandons do Not Claim an Interest Relating to the Subject of this Adversary Proceeding

The United States does not explain how the Brandons have a legally protected interest in these proceedings and merely points out that the Trustee has a separate action pending against Nicole Brandon. In fact, the Brandons' interests are not implicated at all in this adversary proceeding. The Brandons were not intermediate transferees regarding the Transfers to the IRS. There is no allegation in the Amended Complaint that the Transfers were first paid to the Brandons, then ultimately to the IRS for the Brandons' benefit. The Transfers were instead paid directly to the IRS. In other words, the Brandons' presence in this adversary proceeding would not deflect liability away from the United States as the recipient of the Transfers.

While the Brandons' have an indirect financial interest in potentially defending the Transfers to avoid an indemnification action against them by the IRS, this is not an interest protected under Rule 19(a)(1)(B). *See, e.g., Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 536 F.3d 1034, 1041-42 (9th Cir. 2008), *opinion amended and superseded on denial reh'g*, 547 F.3d 962 (9th Cir. 2008) (holding that legally protectable interests must be more than a financial stake or speculation about a future event); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) (party seeking to join under Rule 19 must have legally protectable interest, and not merely financial interest in the proceedings).

### 2. The United States is not Subject to Risk of Multiple Judgments or Inconsistent Obligations

The United States is not in danger of being subject to substantial risk of incurring multiple or inconsistent obligations. If the Trustee prevails on the Amended Complaint, the United States would be liable to the estate for the return of the Transfers, and the Trustee could not, in turn, seek double recovery from the Brandons. The United States, for its part, would not be subject to liability from any other party as a result of any judgment in this case. Accordingly, there is no risk of multiple or inconsistent obligations for the United States if the Brandons are not joined as necessary parties. *See In re Fin. Federated*, 252 B.R. 840, 843–44 (Bankr. S.D. Fla. 2000) (holding that alleged conduit had no interest in the lawsuit and could not have standing to sue transferee for indemnification).

### 3. The Trustee Has No Other Forum in which to Bring These Claims

Finally, if this Court were to find that the Brandons are indispensible parties, that joining them is impossible because they have fled the jurisdiction, and that the action must be dismissed for non-joinder, then the Trustee would have no adequate remedy. The Bankruptcy Court is the only forum where the Trustee's fraudulent transfer claims may be brought, and this is the only court with the authority to adjudicate the causes of action created by the Bankruptcy Code. Based on the allegations in the Amended Complaint, it is the creditors of the Debtors who have been subject to multiple losses at the hands of Nicole Brandon – first in the form of allegedly excessive distributions that she took from the Debtor at a time when the Debtor was insolvent, and second in the form of payments to satisfy her personal debts using Debtor funds. Dismissing this action for failure to join the Brandons would be inequitable to the Trustee and the estate and would effectively insulate the United States from liability for receiving the Transfers to the detriment of the creditors of the estate.

### CONCLUSION

For the foregoing reasons, it is

**ORDERED** as follows:

1. The Amended Complaint [D.E. 33] is dismissed to the extent that it seeks relief beyond the scope of 11 U.S.C. § 550, as detailed earlier in this memorandum order;

2. The Motion [D.E. 38] is otherwise **DENIED**; and

3. The United States shall file an answer to the Amended Complaint within 10 days of the date of this Order.

####

The Clerk shall provide copies to:

Dan Gold, Esq.
Paul A. Allulis, Esq.